Dennis BREVIK et al., Respondents,

State of Minnesota, Plaintiff-Intervenor,

v.

KITE PAINTING, INC.,
Petitioner, Appellant.

No. CX–86–1878.

Supreme Court of Minnesota.

Dec. 11, 1987.

Mark Rotenberg, Minneapolis, for appellant.

David A. Singer, Minneapolis, for respondents.

Mark S. Anderson, St. Paul, for Minn. Chamber of Commerce & Industry, amicus curiae.

Kathleen Winters, Asst. Atty. Gen., St. Paul, for intervenor.

YETKA, Justice.

This is an appeal from a decision of the Minnesota Court of Appeals which reversed a lower court's order granting summary judgment for defendant Kite Painting, Inc. Plaintiff employees sued Kite, alleging that they were discharged from employment in retaliation for exercising statutory rights under the Minnesota Occupational Safety and Health Act (MOSHA). Minn.Stat. ch. 182 (1984). The district court granted defendant's motion for summary judgment, holding that Minn.Stat. § 182.669 (1984) did not authorize a private cause of action for retaliatory discharge. We affirm the court of appeals.

Defendant moved for summary judgment in the trial court on two grounds: "(1) Respondents' claims are preempted by federal labor law principles articulated by the United States Supreme Court in *Allis–Chalmers Corporation v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985); and (2) the Minnesota Supreme Court in *Davis v. Boise Cascade Corp.,* 288 N.W.2d 680 (Minn.1979), has declared that MOSHA does not provide a private cause of action for wrongful discharge." For purposes of this motion, the parties stipulated to the fact that respondents "were terminated because of their exercise of rights under the Minnesota Occupational Safety & Health Act." In addition, the parties stipulated to the following facts, which we take from the opinion of the court of appeals:

> [Defendant] Kite Painting, Inc., is a commercial painting contractor based in Plymouth, Michigan. During part of 1984, [defendant] performed painting services for the Ford Motor Company at its assembly plant in St. Paul. [Plaintiffs] Dennis Brevik and James Schillinger were employed there as commercial painters.

> [Plaintiffs] were represented by the Painters and Allied Trades Union, Local 61, which had negotiated a collective bargaining agreement containing a grievance and arbitration procedure to resolve "all disputes and matters of controversy arising under the provisions of this Agreement." This agreement contained no provision requiring "just cause" for termination. The termination restriction was that the employer could not dismiss an employee for certain refusals to work.

> On several occasions [plaintiffs] experienced health problems thought to have been caused by the poor ventilation of various equipment on the job site, and they complained to their supervisor. Several times all of the painters employed by [defendant] engaged in work stoppages because of health problems.

> On October 18, 1984, [plaintiffs] spoke to their supervisor about making a MOSHA complaint about the ventilation problems. The same day, plaintiff Brevik called MOSHA. On October 19, MOSHA agents inspected the site and found no violation of any MOSHA rule, regulation or standard. On that same day, both [plaintiffs] were fired. For purposes of this proceeding, the parties stipulated that [plaintiffs] "were terminated because of their exercise of rights under the Minnesota Occupational Safety & Health Act."

> After their discharge, [plaintiffs] filed no written grievance; however, it is stipulated that they contacted a Local 61 official and were told that the union could be of no assistance. On October 22 [plaintiffs] complained to MOSHA about their termination. Their file, although still open, has not been actively pursued, at their request. [Plaintiffs] then filed suit in Ramsey County District Court, claiming a private cause of action under Minn.Stat. § 182.669 (1984).

*Brevik v. Kite Painting, Inc.,* 404 N.W.2d 367, 368–69 (Minn.App.1987).

The trial court granted Kite's motion, relying exclusively on our decision in *Davis.* The trial court concluded that this court, in *Davis,* had interpreted Minn.Stat. § 182.669 as not permitting a private right of action for retaliatory discharge. The trial court did not address the federal preemption issue in light of its finding that respondents did not have a private civil action.

The court of appeals reversed, holding that employees who are discharged for exercising a MOSHA right may pursue their remedy either by filing a complaint with the commissioner or by bringing a private civil action in district court. The court of appeals noted that Kite improperly relied on the case of *Davis v. Boise Cascade Corp.*, 288 N.W.2d 680 (Minn.1979), since that case does not stand for the broad proposition that no private cause of action for retaliatory discharge is authorized under MOSHA. The court rejected defendant's arguments that plaintiffs' claim was pre-empted by federal labor law and that plaintiffs' suit should be dismissed for failure to exhaust contractual and administrative remedies. We agree with each of these findings by the court of appeals.

■ We turn first to the issue of whether MOSHA authorizes a private cause of action for retaliatory discharge. The pertinent portions of MOSHA applicable to this case state:

No employee shall be discharged * * * because such employee has filed any complaint * * * under or related to this chapter * * *. Discriminatory acts are subject to the sanctions contained in section 182.669.

Minn.Stat. § 182.654, subd. 9 (1984).

*Any employee who believes that he has been discharged or otherwise discriminated against by any person because such employee has exercised any right authorized under [MOSHA] may, within 30 days after such alleged discrimination occurs, file a complaint with the commissioner alleging the discriminatory act.* Upon receipt of such complaint, the commissioner shall cause such investigation to be made as he deems appropriate. If upon such investigation the commissioner determines that a discriminatory act was committed against an employee he shall bring an action against the employer in the district court in the county where the alleged discrimination occurred or in a

county where the employer transacts business. The district court may order rehiring of the employee, reinstatement of the former position, fringe benefits, seniority rights, back pay, recovery of compensatory damages, and reasonable attorney fees, or other appropriate relief. *Nothing in this section precludes an employee from bringing an action for relief under this section or any other provision of law.*

Minn.Stat. § 182.669, subd. 1 (1984) (emphasis added).[1] The plain import of the last sentence of section 182.669 is that an employee can bring a private civil action to remedy discrimination based on an employee's exercise of MOSHA rights. Defendant maintains, however, that this court, in *Davis v. Boise Cascade Corp.*, 288 N.W.2d 680 (Minn.1979), held that no private cause of action for retaliatory discharge is authorized under MOSHA. Defendant misinterprets our opinion in *Davis.*

In *Davis*, plaintiff was discharged after walking off his job due to what plaintiff considered to be intolerable working conditions. The plaintiff did not contact MOSHA regarding his working conditions. Instead, he filed suit in district court alleging (1) that "defendant had breached a contract between it and the union * * * as a result of which his working conditions were intolerable and dangerous to his health and had made him unable to complete his shift on July 14, 1975, for which he had been discharged" and (2) that "the discharge was a retaliation calculated to maintain working conditions which violated regulations imposed on defendant under ch. 182." *Davis*, 288 N.W.2d at 681.

This court affirmed the lower court's entry of summary judgment for the employer. As to the first allegation, we determined that plaintiff had inexcusably failed to pursue remedial procedures under the collective bargaining agreement as required by federal labor law. *Id.* at 683, *citing Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580

---

**1.** In 1985, section 182.669 was amended to require the commissioner to refer cases to the Office of Administrative Hearings for a hearing

before an administrative law judge rather than filing a complaint in district court. Minn.Stat. § 182.669 (1986).

(1965). As to the second allegation, we determined that section 182.669 did not afford plaintiff a cause of action·for retaliatory discharge where he had not "exercised any right authorized under the provisions of sections 182.65 to 182.674." *Davis*, 288 N.W.2d at 684. We noted that "nothing in [ch. 182] authorized plaintiff to leave his job to require compliance with the regulations." *Id.* In effect, plaintiff was seeking to enforce compliance with MOSHA regulations through a private cause of action. The decision noted that the statute placed such enforcement authority solely with the department. Thus, plaintiffs' retaliatory discharge action, which, in effect, was an attempt to enforce MOSHA regulations, was not authorized by chapter 182.

Under this analysis of *Davis*, the court did not reach the broad conclusion suggested by Kite that section 182.669 does not authorize a private cause of action for retaliatory discharge. Rather, the holding of *Davis* that no private cause of action was authorized is limited to the situation where an employee sought to enforce MOSHA regulations in a private suit and never exercised any rights under MOSHA such as lodging a complaint regarding working conditions. We thus conclude that plaintiffs' private cause of action for retaliatory discharge is authorized by section 182.669.

█ Having determined that plaintiffs do have a private cause of action for retaliatory discharge under state law, we now turn to defendant's argument that such a state claim is pre-empted by the Labor Management Relations Act, § 301(a), 29 U.S.C. § 185(a). Section 301 grants original jurisdiction to federal district courts in suits for violation of collective bargaining agreements. Section 301 has been interpreted as requiring that courts apply principles of federal labor law in all suits for breach of a collective bargaining agreement. *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).[2] Thus, federal labor law pre-empts any inconsistent state rule in claims for violation of a labor contract. *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962). Furthermore, the United States Supreme Court recently announced that the pre-emptive effect of section 301 extended beyond contract claims to include state tort claims. *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 210, 105 S.Ct. 1904, 1910, 85 L.Ed.2d 206 (1985). The policy supporting the pre-emptive effect of section 301 rests on the need for uniformity in construction and application of collective bargaining agreements.[3]

The *Lueck* court, in extending the pre-emptive effect of section 301 to certain state tort claims, reasoned that a violation of a collective bargaining agreement could be characterized as a tort rather than a contract claim. An aggrieved party to the labor agreement could circumvent application of federal law and avoid an agreed-upon grievance procedure by characterizing an action as one in tort. Resolution of a tort claim "rooted" in the collective bargaining agreement would necessarily require a court to interpret the agreement, thus violating a basic premise of federal

**2.** State courts have concurrent jurisdiction over section 301 claims although a state court must apply substantive principles of federal labor law. *Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962).

**3.** The court in *Lueck* explained the reasoning behind this policy:

"The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements. Because neither party could be certain of the rights which it had obtained or conceded, the process of negotiating an agreement would be made immeasurably more difficult by the ne-

cessity of trying to formulate contract provisions in such a way as to contain the same meaning under two or more systems of law which might someday be invoked in enforcing the contract. Once the collective bargain was made, the possibility of conflicting substantive interpretation under competing legal systems would tend to stimulate and prolong disputes as to its interpretation ... [and] might substantially impede the parties' willingness to agree to contract terms providing for final arbitral or judicial resolution of disputes" (footnote omitted).

*Lueck*, 471 U.S. at 210, 105 S.Ct. at 1910, *quoting Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103–04, 82 S.Ct. 571, 577, 7 L.Ed.2d 593 (1962).

labor law that interpretation of the collective bargaining agreement is left to the arbitrator. *Lueck*, 471 U.S. at 219–20, 105 S.Ct. at 1915–16. Thus, in order to preserve the role of the arbitrator and the policy calling for uniform application of federal labor law, the court determined that pre-emption principles applicable to suits alleging contract violations are equally applicable to suits alleging state tort claims where such claims are "substantially dependent upon an analysis of the terms of" a labor contract. *Id.* at 220, 105 S.Ct. at 1916.

In *Lueck*, an employee filed suit in state court alleging that his employer and insurer had acted in bad faith in handling his insurance disability claim, a tort under Wisconsin law. The Supreme Court held that the state claim was pre-empted by section 301. The court noted that, under Wisconsin law, the tort of bad-faith handling arises from a breach of a duty owed to the insured and implicitly created by the express terms of an insurance contract. *Id.* at 216, 105 S.Ct. at 1913, *citing Hilker v. Western Auto. Ins. Co.*, 204 Wis. 1, 13–16, 235 N.W. 413, 414–15 (1931). Because the scope of the duty is thus defined by the contract, a resolution of the tort claim necessarily involves interpretation of the contract. The court concluded that, because Lueck's claim necessarily involved interpretation of the collective bargaining agreement, it was pre-empted by federal labor law.

The Court set forth the following standard for determining whether a state tort claim is pre-empted:

> Our analysis must focus, then, on whether the [state] tort action * * * as applied here confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract. If the state tort law purports to define the meaning of the contract relationship, that law is pre-empted.

*Lueck*, 471 U.S. at 213, 105 S.Ct. at 1912. The court noted that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of federal labor law." *Id.* at 211, 105 S.Ct. at 1911. Congress could not have intended that section 301 "pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Id.* at 212, 105 S.Ct. at 1912.

Certainly, that is the case here. Plaintiffs' retaliatory discharge claim is created by a statute designed to proscribe conduct inimical to health and safety in the workplace. The state, under its police powers, has authority to create such a statute in order to protect its citizens. Indeed, the state has no greater duty. Congress certainly did not intend to pre-empt the exercise of such authority by enactment of federal labor laws.

Under the *Lueck* standard, plaintiffs' state law claim would be pre-empted only if it is substantially dependent upon or inextricably intertwined with the terms of the applicable collective bargaining agreement. *Lueck*, 471 U.S. at 213, 220, 105 S.Ct. at 1912, 1916. We note first that plaintiffs' claim, as stipulated by the parties, is one for retaliatory discharge for exercising MOSHA rights. The collective bargaining agreement does not specifically address this stipulated cause for discharge.[4] The agreement does not expressly contain a "just cause" or similar provision governing circumstances under which an employee may be discharged. Thus, plaintiffs' claim arises out of the statute, not the collective bargaining agreement.

Furthermore, resolution of plaintiffs' claim does not depend on an interpretation of the terms of the collective bargaining agreement. A trial court faced with a retaliatory discharge claim under MOSHA must determine if the plaintiff employee was, in fact, terminated for exercising MOSHA rights or, instead, was terminated for

---

4. The entire collective bargaining agreement is not a model for detail or specificity; it appears to be the result of industrywide bargaining between groups of employers and the international union.

any other non-discriminatory, legitimate reason. There is no need for the trial court to determine if the non-discriminatory reason put forth by the employer would otherwise justify discharge under the collective bargaining agreement. The inquiry is limited to deciding whether or not plaintiff was terminated for exercising MOSHA rights. Such a determination does not depend on the terms of the collective bargaining agreement and, therefore, the court does not infringe on the role of the arbitrator as interpretor of that agreement.

In sum, plaintiffs' claim is created by statute and independent of the collective bargaining agreement. Further, it does not require an analysis of the terms of the agreement. Therefore, we conclude that federal labor law does not pre-empt plaintiffs' state law claim.[5]

■ Finally, we agree with the court of appeals that plaintiffs' suit should not be dismissed for failure to exhaust administrative remedies. The statute in this case grants plaintiffs alternative methods to pursue remedies for discrimination under MOSHA. Minn.Stat. § 182.669 (1984). Furthermore, the doctrine of primary jurisdiction does not require dismissal of plaintiffs' suit. We have stated that this "doctrine provides that 'in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created * * * for regulating the subject matter should not be passed over.'" *Minnesota–Iowa Television Co. v. Watonwan T.V. Improvement Ass'n,* 294 N.W.2d 297, 302 (Minn.1980), *quoting Far East Conference v. United States,* 342 U.S. 570, 574, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952). Plaintiffs' claim is not outside the conventional experience of judges and does not require the exercise of administrative discretion. Therefore, we conclude that plaintiffs' retaliatory discharge claim may pro-

ceed in district court notwithstanding the potential administrative remedy available to them.

The court of appeals is affirmed.

---

5. Our conclusion would not differ even if we implied a "just cause" provision in the applicable collective bargaining agreement as suggested by defendant. Resolution of plaintiffs' retaliatory discharge claim would not equate to determining whether plaintiffs were terminated for "just cause." *See Baldracchi v. Pratt & Whitney*

*Aircraft Div., United Technologies Corp.,* 814 F.2d 102, 105 (2d Cir.1987); *Paige v. Henry J. Kaiser Co.,* 826 F.2d 857 (9th Cir.1987); *cf. Lingle v. Norge Div. of Magic Chef, Inc.,* 823 F.2d 1031 (7th Cir.1987), *cert. granted,* — U.S. —, 108 S.Ct. 226, 98 L.Ed.2d 185 (1987).